## WHITTEN *versus* HANSON.

Land, held in co-tenancy and lying between known monuments, was divided into lots upon a plan, which exhibited the width of each lot; and an assignment of the lots among the co-tenants, was made according to the plan.

The plan however was erroneous, the distance between the exterior sides being greater than it represented. *Held,* that the surplus was to be divided among the several lots, in proportion to the respective widths.

ON FACTS AGREED.

WRIT OF ENTRY.

The tract A B C D was owned by the demandant and his co-tenants. On its North side, it extended from Maine street along Cutts street 298 feet to land now belonging to the Saco Water Power Company. On its South side, it extended from Maine street $279\frac{4}{10}$ feet to land of said company.

Intending to make an amicable partition among themselves, the co-tenants carried their title deed to one Thos. Quimby, and requested him, from examining the deed to make a plan of the land. He made no survey of the land, but drew a plan, as exhibited by the black lines on the annexed diagram, extending the North line $289\frac{38}{100}$ feet and the South line, $272\frac{4}{10}$ feet from Maine street, and laid down therein the lots No. 1, 2, 3, 4 and 5.

Whitten *v.* Hanson.

The co-tenants made a division according to the plan, and lots No. 4 and 5 were assigned and released to this demandant, who afterwards conveyed lot No. 5, according to the plan. Under that conveyance the tenant now holds the lot, having gone into the occupation of it and erected a fence on its Eastern line, E. F., according to the plan.

A recent survey shows *that* there was an error in Quimby's plan; — *that* the North side of the tract between Main street and the land of the Water Power Company, instead of being $289\frac{38}{100}$ feet, as exhibited on the plan, is in fact 298 feet; and its Southern side, instead of being $272\frac{4}{10}$ feet, as exhibited on the plan, is in fact $279\frac{4}{10}$ feet; thus leaving on the North side, $8\frac{62}{100}$ feet and on the South side 7 feet more than was computed for the aggregate of the five lots.

The demandant claims to press the tenant's lot up to the true line of the Water Power Company, letting lots 1, 2, 3, 4 and 5 be enlarged, each one in proportion to its width, thus apportioning the surplus among them all. Upon this basis, the demandant claims from the tenant the narrow strip E, M, N, F.

*J. Shepley* and *Hayes*, argued for the demandant, and cited *Moody* v. *Nichols*, 16 Maine, 23; *Brown* v. *Gay*, 3 Greenl. 126; *Wyatt* v. *Savage*, 2 Fairf. 429; *Lincoln* v. *Edgecomb*, 28 Maine, 275; *Mosher* v. *Berry*, 30 Maine, 90, and cases there cited.

*J. M. Goodwin*, argued for the tenant, and cited *Davis* v. *Rainsford*, 17 Mass. 210; *Blaney* v. *Rice*, 20 Pick. 62; *Magoun* v. *Lapham*, 21 Pick. 137; *Thomas* v. *Patten*, 13 Maine, 329; *Kennebec Purchase* v. *Tiffany*, 1 Greenl. 219.

WELLS, J. — The demandant, Thomas H. Cole and Stephen W. Dearborn were owners, as tenants in common, of the Cutts lot. For the purpose of making a division of the lot, they employed Thomas Quimby to make a plan of it. He made a plan without viewing the land, and without any actual survey or admeasurement. A division was made between the owners corresponding to the plan, to which reference is made in the deeds of partition. Lots numbered four and five upon the plan were conveyed to the demandant, who conveyed

number five, " meaning to describe number five on a plan of the Cutts lot," to William H. Hanson, and the tenant has the title of William H. Hanson. The question between the parties relates to the dividing line of lots four and five. Those lots are laid down upon the plan as of the same width, and contiguous to each other.

By an accurate admeasurement, as appears by the plan of Eliphalet Nott, of the tier of lots lying on the southerly side of Cutts street, there is an error in Quimby's plan. The northerly line of the tier is eight feet and $\frac{62}{100}$, and the southerly line is seven feet, longer than these lines are stated to be on Quimby's plan. There are no monuments to mark the boundaries between the lots, while the exterior boundaries were certain and fixed. As it was not the intention to leave any surplus, but to divide the whole land, the case falls within the principle of *Brown* v. *Gay*, 8 Greenl. 126, and *Mosher* v. *Berry*, 30 Maine, 83. There is nothing to prevent the application of this rule to the several lots, and each one will be entitled to its share of the surplus in proportion to its length of line from Maine street to the land of the Water Power Company.

If the line of the lots is run from Main street so as to include number four, and that of number five is run from the land of the Water Power Company, upon which it is bounded by the deed of the demandant, then the two lots four and five would not meet, as they should do by the plan, and as was clearly intended by the parties.

Quimby did not run or mark any lines upon the earth, but the plan represents the five lots as embracing all the land on the south of Cutts street, and as adjoining each other. And the division, which was intended to be made, cannot be carried into effect without giving to each lot its due proportion of the surplus.      *Tenant defaulted.*

Shepley, C. J., and Tenney, Howard and Appleton, J. J., concurred.